**ROBERT D. STEWART**
7315 Geary Blvd. #3,
San Francisco, California 94121
(415) 264-4339
robertstewartphd@aol.com
Plaintiff in Pro Per

FILED
SEP 16 2026
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **ROBERT STEWART,**<br>*Plaintiff,*<br>**v.**<br><br>**ERICA PYCH KURIEN, D.O.,**<br>*An individual Defendant.* | CV 26 10558 LJC<br>**Case No.:**<br>**Trial Date:**<br>**Judge:**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**12-PERSON JURY TRIAL DEMANDED** |

**Jurisdiction**: This court has jurisdiction because it arises under the laws of the United States

**Venue:** Venue is appropriate because both the Plaintiff and Defendant reside in San Francisco, CA, and the acts identified in this complaint occurred in San Francisco.

**Intradistrict Assignment**: The lawsuit should be assigned to the San Francisco division of this Court because the events which give rise to the lawsuit occurred in San Francisco County

**Parties**: Plaintiff Robert D. Stewart v Erica Pych Kurien, D.O.

**COMPLAINT FOR:**

**1. Violation of the Electronic Communications Privacy Act (18 U.S.C. §§ 2511, 2520)**

**2. Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030(g))**

**3. Deprivation of Constitutional Rights Under Color of Law (42 U.S.C. § 1983 — Fourth & Fourteenth Amendments)**

**4. Civil RICO — Pattern of Racketeering Activity (18 U.S.C. §§ 1962(c), 1964(c))**

**5. Medical Battery and Attempted Murder (State Law — Supplemental Jurisdiction)**

**6. Intentional Infliction of Emotional Distress (State Law — Supplemental Jurisdiction)**

**7. Violation of the California Invasion of Privacy Act (Cal. Penal Code §§ 632, 637.2)**

**8. Intrusion Upon Seclusion (State Law — Supplemental Jurisdiction)**

**9. Defamation and Civil Conspiracy (State Law — Supplemental Jurisdiction)**

**10. Fraudulent Concealment (State Law — Supplemental Jurisdiction)**

**DEMAND FOR 12-PERSON JURY TRIAL**

## I. INTRODUCTION

1. This civil action arises from a licensed physician's **repeated, intentional,** and **criminal violations** of a **terminally-ill Black War veteran's (and Government Shadow Asset for 30 years) federal and state privacy rights, constitutional rights, and bodily integrity, coupled with acts of medical battery, attempted murder, wire fraud, computer fraud, criminal conspiracy, and evidence tampering that endangered the Plaintiff's life and were motivated by racial animus and a desire to conceal initial criminal conduct.**

2. **Defendant Dr. Erica Pych Kurien**, a licensed osteopathic physician, **secretly and unlawfully made audio recordings of at least five of Plaintiff's confidential medical appointments without his knowledge or consent**, using an artificial intelligence application called Abridge AI installed on **her personal cellular telephone.** She then created **false entries in Plaintiff's official medical records fraudulently stating that verbal consent had been obtained**, and **transmitted those false records through interstate electronic communications to third-party AI servers for processing.**

3. Upon **discovering** the unlawful recordings, Defendant Kurien **escalated her criminal conduct to include: (a) bringing an unauthorized third party into Plaintiff's private medical examination without consent;** (b) **catastrophically slashing** Plaintiff's **life-sustaining Gabapentin dosage by over eighty percent (from 23,400 mg daily to 3,600 mg daily)** after **eighteen years of stable dependency**, an act designed to **induce lethal seizures and cardiac arrest;** (c) prescribing **Valium** (diazepam), a **benzodiazepine** to which Plaintiff has a documented **severe allergy**; (d) ordering a **full-panel drug screening on Plaintiff without his knowledge or consent** — a procedure reserved for **criminal defendants, conducted on a Black man with no criminal charges pending;** and (e) **conspiring (illegal collusion)** with Kaiser Permanente's **Psychiatry** and **Addiction Medicine departments to create a false and defamatory medical narrative branding Plaintiff as a drug addict to discredit him and conceal her initial crimes.**

4. Defendant Kurien's **conduct** constitutes, at **minimum**: **SIX violations of the Electronic Communications Privacy Act (18 U.S.C. § 2511); unauthorized access and transmission of protected medical data through interstate computer networks in violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030); deprivation** of

**Plaintiff's Fourth Amendment right to be free from unreasonable searches and Fourteenth Amendment right to equal protection under color of state law (42 U.S.C. § 1983); a pattern of racketeering activity including wire fraud (18 U.S.C. § 1343) and obstruction of justice (18 U.S.C. § 1512) in violation of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962); medical battery; attempted murder; intentional infliction of emotional distress; SIX violations of the California Invasion of Privacy Act (Penal Code §§ 632, 637.2); intrusion upon seclusion; defamation and civil conspiracy; and fraudulent concealment.**

5. Plaintiff **Robert D. Stewart Ph.D.** is a 57-year-old United States **government veteran** currently classified as **terminally ill under California Health & Safety Code § 11159.2, with a prognosis of approximately one to two years to live. He is in the final months of that prognosis. Time is of the essence.** Every day this matter remains in the **poisoned state court system** — where **Defendant's institutional affiliates have leveraged their influence to obstruct justice, deny discovery, and run out the clock on a dying man** — is a day **stolen** from Plaintiff's **right** to have his **federal claims heard** by an **impartial federal judge and jury**.

**II. <u>JURISDICTION AND VENUE</u>**

**6.** This Court has **subject matter jurisdiction** over **Counts 1 through 4 pursuant to 28 U.S.C. § 1331, because this action arises under the Electronic Communications Privacy Act, 18 U.S.C. §§ 2511 and 2520; the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962 and 1964, all of which are laws of the United States.**

7. This Court has **supplemental jurisdiction over Counts 5 through 10 pursuant to 28 U.S.C. § 1367(a),** because those **state-law claims form part of the same case or controversy and derive from a common nucleus of operative facts.**

8. Venue is **proper** in **this District pursuant to 28 U.S.C. § 1391(b)(2)** because a **substantial part** of the **events** and **omissions** giving rise to the claims **occurred in this District, specifically at Kaiser Permanente San Francisco medical facilities** located at 2238 Geary Boulevard and 2425 Geary Boulevard, San Francisco, California.

9. Venue is also **proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.**

10. Assignment to the **San Francisco Division** is **proper** because **all events occurred in San Francisco County, California.**

## III. PARTIES

11. Plaintiff **Robert D. Stewart Ph.D.** is an individual **residing at 7315 Geary Blvd. #3, San Francisco, California 94121.** He is a 57-year-old United States government veteran with a **30-year history of service to his country, a professional jazz saxophonist, and holder of Doctorates in Theology and Astronomy.** Plaintiff is currently classified as **terminally ill under California Health & Safety Code § 11159.2.**

12. **Defendant Erica Pych Kurien, D.O.** is an individual and **licensed osteopathic physician** practicing medicine in San Francisco, California. At all relevant times, Defendant was a physician licensed by the State of California through the **Osteopathic Medical Board of California,** possessing authority granted by state law to examine, treat, prescribe medication, order laboratory tests, and access confidential medical

records. **Defendant is sued in her individual cituzen capacity. Kaiser Permanente is not being sued whatsoever.**

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Terminal Illness and Palliative Care Status

**1.** Plaintiff suffers from **multiple complex, incurable, and irreversible medical conditions including: End Stage Intestinal Motility and Distention Disorder; Autoimmune Disorder of the Autonomic Nervous System; Small Fiber Neuropathy; Bullous Lichen Planus Pemphigoides (affecting approximately 0.5% of the global population); Polyneuropathy; Chronic Kidney Disease Stage 3; and Gaseous Distention of the Intestine plus Motility Disorder.**

**2. Plaintiff has been formally classified as terminally ill pursuant to California Health & Safety Code § 11159.2. His treating physicians have advised that he has approximately one to two years to live, and he is now in the final months of that prognosis.**

**3. Seven physicians across three healthcare systems have classified Plaintiff as a palliative care patient: Dr. Erica P. Kurien (Kaiser Permanente); Dr. Tulani Johnson (Video Concierge); NP Albgal (Sutter Health); Dr. Amy Guzman (Sutter Health); Dr. Apelle (UCSF); Dr. Govil (UCSF); and Dr. Amy Chu (UCSF).**

**4. On January 14, 2026, Dr. Esther May-Ann Chu, M.D. of UCSF Primary Care issued Palliative Care Referral Order No. 101473448, referring Plaintiff to By the Bay Health hospice services. The referral notes Plaintiff's explicit request to discuss "terminal illness 11159.2."**

**5.** Kaiser Permanente's **own Progress Notes** dated **December 24, 2025 (Dr. Joseph Leung, M.D.) confirm Plaintiff's self-reported terminal status under § 11159.2** and record that Southern California physician **Dr. Jennifer Wilkes** advised Plaintiff he has approximately **one to two years to live due to his gastrointestinal condition. That prognosis was one year and a half ago.**

**6.** On **November 23, 2020, Dr. Elizabeth Ollie Ross, M.D. (Kaiser Gastroenterology) confirmed in writing: "There is no surgery to correct this since it often involves your entire bowel — which is over 20 feet."**

**7.** For approximately **seventeen years prior to Defendant Kurien's assumption of Plaintiff's care in late 2024,** Plaintiff had been **maintained on a stable, life-preserving palliative medication regimen including Gabapentin (23,400 mg daily for full-body neuropathy), Linzess, Ambien, and Ativan (lorazepam, prescribed for gastrointestinal motility, not anxiety). This regimen was established and maintained by multiple prior Kaiser physicians over nearly two decades. Any sudden, drastic alteration to this regimen — particularly the Gabapentin dosage — would predictably cause life-threatening neurologic destabilization, seizures, and potential cardiac arrest.**

**8. Defendant Kurien** was **fully aware** of **Plaintiff's dire health status and hi seventeen years (22 years in total counting his years at other hospitals before Kaiser in 2009) of medication dependency when she assumed his care.**

**B. The Unlawful Recordings — Six ECPA/CIPA Violations Using ABRIDGE AI**

**9.** Plaintiff attended **multiple** scheduled medical appointments with Defendant Kurien at Kaiser Permanente San Francisco. Each appointment occurred **in a private medical examination setting where Plaintiff had a reasonable expectation that his communications would remain confidential and private.** Doctor-patient communications are **presumptively confidential under California law.**

10. On at least **five separate occasions**, Defendant Kurien **intentionally** and **secretly** used an **audio recording** application known as **Abridge AI to intercept and record Plaintiff's confidential oral communications without his knowledge or consent.** These recordings occurred on or about:

- **a. December 24, 2024;**
- **b. January 30, 2025;**
- **c. February 25, 2025;**
- d. **March 23, 2025;** and
- **e. April 8, 2025.**

**11.** Plaintiff **never** gave **verbal** or **written consent** for **any** of these **recordings**. Defendant Kurien **never sought Plaintiff's consent prior to making any of these recordings. There is no signed agreement, no verbal acknowledgment, no written documentation, and no empirical evidence of any kind supporting any claim of consent. Plaintiff was never informed that recording would occur.**

**12. Abridge AI** is a **clinical documentation tool that requires manual activation by the clinician. It does not record automatically or passively. Abridge AI can only be**

**initiated by the clinician manually opening the application on a personal cellular device and affirmatively pressing a button to begin recording. Each recording required Defendant's personal, intentional action using her own cellphone. The recordings could not have occurred accidentally or without Defendant's direct knowledge and control.**

**13.** Upon processing, Abridge AI **transmits the audio recordings** and generated text through **interstate electronic communications networks to third-party AI servers** for **cloud-based processing. This transmission constitutes an unauthorized disclosure of Plaintiff's confidential medical communications to third parties without his consent.**

**14.** Plaintiff **discovered** the **unlawful recordings by reviewing his After-Visit Summary notes through Kaiser's patient portal.** In each summary corresponding to the above dates, **Defendant Kurien had entered the verbatim false notation: "Patient provided verbal consent to be recorded using documentation assistance tool."**

**15. This statement was and is categorically false. Plaintiff never provided any consent. The notation was a fraudulent entry into Plaintiff's official medical record, transmitted through interstate electronic communications, designed to create a post-hoc paper trail concealing the criminal nature of the recordings.**

**16.** Upon **discovering** the **false notations, Plaintiff sent messages through Kaiser's secure messaging system notifying Defendant Kurien of the unauthorized recordings and false consent entries. Defendant Kurien did not deny the recording, did not correct the record, and did not respond.**

**17.** At a subsequent appointment, Defendant Kurien **asked for permission to record. Plaintiff explicitly refused.** Following that refusal, Defendant Kurien moved Plaintiff to

a different examination room than the one used in prior appointments — conduct **reflecting her consciousness of guilt and awareness that prior recordings had been unauthorized.**

**C. The Sixth Privacy Violation — Unauthorized Third-Party Observer (Salina Lo)**

**18.** On or about **May 30, 2025,** after being put on **written notice of Plaintiff's objections** to **unauthorized recordings,** Defendant Kurien **committed a sixth independent privacy violation by bringing an unauthorized third party, Ms. Salina Lo, a Kaiser clinic manager, into Plaintiff's private medical appointment.**

**19. Plaintiff was never informed that Ms. Lo would be present, was never asked for consent, and never agreed to have a third party present. Defendant Kurien's own Clinical Progress Note dated May 30, 2025 — authored in her own hand — admits: "Salina Lo, clinic manager was present for discussion and to observe."**

**20. This constitutes an independent interception and violation of Plaintiff's confidential communications, separate and distinct from the five Abridge AI recordings, and a direct breach of the AMA Code of Medical Ethics. This is the sixth violation of both ECPA and CIPA.**

**D. Attempted Murder by Catastrophic Medication Reduction — Gabapentin 23,400 mg → 3,600 mg**

**21.** After **seventeen years** of stable, **medically necessary** dependency on **23,400 mg of Gabapentin daily — a dosage necessitated by Plaintiff's extreme full-body neuropathy and established by multiple prior Kaiser physicians — Defendant Kurien, without medical justification, unilaterally ordered that Plaintiff's**

**Gabapentin dosage be slashed to 3,600 mg per day. This is a reduction of over eighty percent (80%+).**

**22. Such a drastic reduction of a GABA analogue after nearly two decades of dependency is known in medicine to be potentially lethal, inducing life-threatening seizures, cardiac arrest, and neurologic destabilization.** This act was not a **medical judgment** — it was a **malicious act designed to inflict maximum harm on a terminally ill patient who had discovered Defendant's criminal recordings.**

**23. Defendant Kurien further weaponized Plaintiff's gastrointestinal condition against him by enforcing strict "don't refill until exactly 30 days" policies for a patient with End Stage Intestinal Motility and Distention Disorder. No person with this condition can ensure that oral medication will reliably pass through intestines that no longer function normally. This was a foreseeable trap designed to create medication gaps that would trigger withdrawal and potentially fatal seizure activity.**

**24. The foreseeable consequences of Defendant Kurien's actions manifested on February 18, 2025, when Plaintiff was forced to seek emergency medical care at the Kaiser Permanente Emergency Department in San Francisco for severe, debilitating withdrawal symptoms, including chest pain and tremors. The Emergency Department physician, Dr. Winnie W. Chan, M.D., diagnosed benzodiazepine withdrawal and administered Librium (chlordiazepoxide), a long-acting benzodiazepine — nearly killing Plaintiff given his documented allergy.**

**25. Compounding this life-threatening act, Defendant Kurien prescribed Valium (diazepam), a benzodiazepine that she prescribed at 10 mg per day plus Clorazepate (a second benzodiazepine) prescribed at 17 and a half mg per day. In total, that is 27**

**and a half milligrams of benzodiazepines per day. Plaintiff's medical chart, which Defendant Kurien was obligated to review, contains a clear and prominent alert for a severe allergy to benzodiazepines in high dosages. Prescribing a medication to which a patient has a known, documented severe allergy demonstrates a conscious disregard for patient safety and life, meeting the legal standard for implied malice – attempted murder.**

**26. These acts, taken together — slashing the Gabapentin dosage by 80%+, prescribing a known lethal allergen, and weaponizing refill timing against a patient with intestinal motility failure — constitute a direct and substantial step toward causing Plaintiff's death, undertaken with conscious disregard for human life.**

**E. Medical Battery — Fentanyl Administration (extremely lethal opioid)**

27. **Defendant Kurien** was **fully aware** that due to **Plaintiff's End Stage Intestinal Motility and Distention Disorder, the administration of powerful opioids like Fentanyl could be lethal** given his compromised gastrointestinal system.

**28. Despite** this knowledge, during a **colonoscopy procedure, Defendant Kurien approved the administration of Fentanyl to Plaintiff without his informed consent. This was not negligence — it was a deliberate and willful disregard for Plaintiff's life and safety constituting medical battery.**

29. A reasonable physician in Defendant Kurien's position **would have known** that administering a **known lethal allergen without consent to a terminally ill patient creates a substantial risk of death.**

F. **Illegal Full Drug Panel** — Conducted **Without Consent on a Black Man** With **No Criminal Charges**

**30.** During a medical visit for an unrelated issue, **Defendant Kurien ordered a full-panel drug screening on Plaintiff without his knowledge, informed consent, or any medical justification. Plaintiff was never asked for permission.** He was **never informed that his bodily fluids would be tested for controlled substances. He discovered the drug panel only after reviewing his medical records, which showed a "U-Tox" (urine toxicology) result.**

**31. Under California law,** a physician **cannot conduct drug urine testing** or **any form of drug screening on a patient without their prior informed consent, absent a felony charge or child safety issue. Plaintiff has no criminal charges pending. No felony proceedings exist. No child safety issue exists. The sole exception to the consent requirement for drug testing does not apply.**

**32. The conduct of ordering a full drug panel on a Black man without consent is not standard medical care.** It is a **search** of **Plaintiff's bodily fluids without a warrant, without probable cause, and without consent** — **conduct** that, **when performed by a state-licensed physician wielding state-granted authority over a patient of a different race, constitutes an unreasonable search in violation of the Fourth Amendment of the United States Constitution.**

**33. The racial dimension of this act is inescapable. Full-panel drug screens are ordered for criminal defendants and parolees — not for terminally ill palliative care patients. The decision to subject a Black man to this procedure without consent, without criminal proceedings, and without medical justification reflects racial**

**profiling and discrimination in violation of the Fourteenth Amendment's Equal Protection Clause.**

34. **Defendant Kurien then used the results of this illegal drug panel — which tested positive for alprazolam and lorazepam, medications Plaintiff was legally prescribed — as ammunition for her conspiracy to brand Plaintiff as a drug addict** (see Section G below).

G. **Criminal Conspiracy — Defamation** and **Collusion** with **AMRS, Psychiatry**, and the **Kaiser Pharmacy**

35. **Evidence reveals a coordinated conspiracy, orchestrated by Defendant Kurien, to discredit Plaintiff by falsely labeling him a drug abuser. This conspiracy was the motive for the attempted murder: to create a post-hoc justification for her harmful medication changes and to defame Plaintiff should he survive and report her crimes.**

36. **Defendant Kurien secretly consulted** with **Kaiser Permanente's Addiction Medicine and Recovery Services (AMRS) department and Psychiatry department without Plaintiff's knowledge or consent, planting a false narrative of drug-seeking behavior. She referenced these secret consultations in her own medical notes, stating: "In consultation with colleagues in psychiatry and addiction medicine will initiate diazepam 10 mg." She further wrote: "Consulted with my colleagues in chemical dependency."**

37. **These secret consultations occurred between Dr. Kurien and Sloan Lesley Norman, Ph.D. (Kaiser eConsult, April 4, 2025), among others.** Dr. Kurien's **referral to this provider** stated: **"Patient with chronic neuropathic pain, on high dose ambien and**

gabapentin and lorazepam, seen by neurology, GI, wanted palliative. I need help managing his medications."

38. This collusion culminated in an unsolicited letter from Kaiser's AMRS department dated March 19, 2025, addressed to Plaintiff at his home, pressuring him about substance abuse. Two additional unsolicited phone calls from AMRS followed. Plaintiff has no history of substance abuse, no prior addiction treatment, and no medical basis for any addiction medicine referral.

39. The conspiracy further involved the illegal drug panel (Section F above), the results of which were shared between Defendant Kurien, the Psychiatry department, and the Pharmacy department to build a fraudulent medical record. Defendant Kurien's own notes reveal this coordination: "Given U-Tox positive for both alprazolam and lorazepam informed patient that a wellness call from our addiction medicine pharmacy team will happen."

40. This coordinated effort between Dr. Kurien and other Kaiser departments to build a fraudulent medical record branding a terminally ill Black man as a drug addict constitutes defamation per se (accusing someone of being a drug addict is libel per se under California law) and civil conspiracy to defame.

41. The purpose of the conspiracy was twofold: (a) to create a paper trail that would justify Defendant Kurien's life-threatening medication changes as legitimate medical concern rather than attempted murder; and (b) to discredit Plaintiff as a witness should he report her initial crimes (the illegal recordings).

H. **Wire Fraud and Computer Fraud — Transmission** of **False Medical Records** via **Abridge AI Interstate Servers**

**42. Defendant Kurien devised a scheme to defraud by: (a) secretly recording Plaintiff's confidential medical appointments; (b) fabricating false consent entries in Plaintiff's medical records; and (c) transmitting those false records through interstate electronic communications networks, including the Abridge AI application's cloud-based processing servers, Kaiser Permanente's electronic health record system (Epic), and interstate internet infrastructure.**

**43.** Each time Defendant Kurien **activated Abridge AI on her personal cellular telephone, the application transmitted audio recordings and generated text across state lines to third-party servers for processing. These transmissions constitute the use of interstate wire communications in furtherance of a scheme to defraud, in violation of 18 U.S.C. § 1343.**

**44. The false consent notations — "Patient provided verbal consent to be recorded using documentation assistance tool" — were entered into Plaintiff's electronic medical record through Kaiser's Epic system, which operates across state lines. These false statements were made with intent to deceive and to deprive Plaintiff of his right to privacy, his right to accurate medical records, and his right to informed consent.**

**45. The Abridge AI application's unauthorized access to and transmission of Plaintiff's confidential medical data through protected computers — including cloud servers and electronic health record systems — without Plaintiff's authorization or consent**

**constitutes a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2) and (a)(5).**

**46. Plaintiff has suffered damage and loss by reason of these violations, including impairment of his medical care, compromise of his confidential medical information, and the cascading consequences of the false medical narrative built upon the illegally obtained data.**

I. **Obstruction of Justice — Concealment, Evidence Spoliation, and Settlement Pressure**

**47. Upon discovering Defendant Kurien's unlawful conduct, Plaintiff demanded copies of the audio recordings, Abridge AI audit logs, and consent verification data. Defendant Kurien and affiliated entities have refused to produce this evidence.**

48. **Text message exchanges with Kaiser Claims Adjuster "Reggie" (Reginald Thompson) confirm the existence of the recordings while simultaneously attempting to pressure Plaintiff to remove** Defendant Kurien **from any lawsuit** and **accept a nominal $3,000 settlement.** This demonstrates **institutional awareness** of the **violations** and **attempted suppression** through **settlement pressure.**

**49. Plaintiff was provided inconsistent and contradictory explanations,** including **false claims** that Abridge AI **"does not record." Kaiser Permanente's own September 13, 2025 grievance response letter states: "Abridge is not a recording device but rather is an AI ambient note-taking program." This is false.** Abridge's **own public documentation confirms that audio recording does occur, consent is required, and audit logs exist.**

50. Because Abridge AI **recordings** are **initiated** through the **clinician's personal cellular device, Defendant Kurien's own device constitutes a repository of relevant evidence including application usage data, metadata, timestamps, and audit information.** She has **failed** and **refused to preserve or produce any** such **evidence**, supporting a reasonable inference that she is **knowingly withholding or concealing evidence and destroying or altering electronic evidence to prevent its use in legal proceedings — conduct that constitutes obstruction of justice and evidence spoliation**.

**J. Exhaustion of Non-Judicial Remedies**

**51. Plaintiff has filed complaints with every available regulatory and law enforcement body:**

**a. San Francisco Police Department — three separate reports (Incident Nos. 250245648 and 250316465), refused to investigate;**

**b. San Francisco District Attorney's Office — stated it needed an investigator, but SFPD refused to assign one;**

**c. California Medical Board — Complaint No. 8002025117229, no meaningful action;**

**d. Osteopathic Medical Board of California — Complaint No. 9002025000377, no meaningful action;**

**e. U.S. Department of Health and Human Services, Office for Civil Rights — Receipt No. 618303, acknowledged, no action taken;**

**f. California Office of Inspector General;**

**g. California Department of Consumer Affairs BreEZe licensing system;**

**h. Federal Bureau of Investigation — contacted twice, no action taken.**

**52. None of these agencies has taken meaningful corrective action. This Court is** Plaintiff's **forum of last resort.**

K. **Emotional and Psychological Harm**

1. **Defendant Kurien's course of conduct has caused Plaintiff severe emotional distress. He now attends medical appointments wearing recording devices and a metal detector for self-protection.**

2. **A terminally-ill Black veteran who served his country for 30 years should not have to wire himself for protection against his own physician**. Defendant Kurien's conduct has **destroyed Plaintiff's trust in the medical profession during the final months of his life.**

3. **Plaintiff has suffered anxiety, fear, humiliation, and a profound loss of trust in medical providers. These harms were a direct and foreseeable result of Defendant Kurien's conduct.**

## V. CAUSES OF ACTION

---

### COUNT 1: VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT (18 U.S.C. §§ 2511, 2520)

1. Plaintiff realleges and incorporates by reference all preceding paragraphs.

2. During his medical appointments with Defendant Kurien, Plaintiff had a justifiable expectation that his oral communications were not subject to interception under circumstances justifying such protection under 18 U.S.C. § 2510(2).

3. Defendant Kurien intentionally intercepted Plaintiff's oral communications on at least six separate occasions by using an electronic, mechanical, or other device — specifically, the

Abridge AI application installed on her personal cellular telephone — to record those communications without Plaintiff's prior consent, in violation of 18 U.S.C. § 2511(1)(a).

4. The six interceptions occurred on or about December 24, 2024; January 30, 2025; February 25, 2025; March 23, 2025; April 8, 2025; and May 30, 2025 (the sixth violation involving the unauthorized third-party observer, Salina Lo).

5. Defendant Kurien's actions were willful and intentional, not accidental or negligent. She manually activated the recording application on each occasion with full knowledge that Plaintiff had not consented.

6. As a direct and proximate result of Defendant Kurien's violations, **Plaintiff is entitled to statutory damages of no less than $10,000 for each of the six violations, for a total of at least $60,000, in addition to punitive damages and reasonable attorney's fees and costs pursuant to 18 U.S.C. § 2520(b)(3).**

---

COUNT 2: VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

(18 U.S.C. § 1030(g))

7. Plaintiff realleges and incorporates by reference all preceding paragraphs.

8. Defendant Kurien, without authorization and in excess of authorized access, intentionally accessed and transmitted Plaintiff's protected confidential medical communications and data through protected computers — including the Abridge AI cloud-based processing servers, Kaiser Permanente's Epic electronic health record system, and interstate internet infrastructure — in violation of 18 U.S.C. § 1030(a)(2) and (a)(5).

9. Defendant Kurien's unauthorized transmission of Plaintiff's confidential medical recordings to third-party AI servers for processing, without Plaintiff's knowledge or

consent, caused damage and loss to Plaintiff, including impairment of his medical care, compromise of his confidential medical information, and the cascading consequences of the false medical narrative built upon the illegally obtained data.

**10. Plaintiff's damages and losses exceed $5,000 in value, satisfying the jurisdictional threshold of 18 U.S.C. § 1030(c)(4)(A)(i)(I).**

**11. Pursuant to 18 U.S.C. § 1030(g), Plaintiff is entitled to maintain this civil action to obtain compensatory damages and injunctive relief, including an order requiring the preservation and production of all Abridge AI recordings, audit logs, and associated electronic evidence.**

---

## COUNT 3: DEPRIVATION OF CONSTITUTIONAL RIGHTS UNDER COLOR OF LAW (42 U.S.C. § 1983 — Fourth & Fourteenth Amendments)

12. Plaintiff realleges and incorporates by reference all preceding paragraphs.

**13.** At all relevant times, Defendant Kurien acted under color of state law. She is a physician licensed by the State of California through the Osteopathic Medical Board of California, a state regulatory agency. Her license to practice medicine, her authority to examine patients, prescribe medications, order laboratory tests, and access confidential medical records are all powers granted to her by and through the laws of the State of California. **As established in *United States v. Damon Causey*, 185 F.3d 407 (5th Cir. 1999), "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." Defendant Kurien's misuse of her state-granted medical authority to violate Plaintiff's constitutional rights constitutes action under color of law.**

**14.** Defendant Kurien deprived Plaintiff of his rights under the Fourth Amendment of the United States Constitution **by ordering a full-panel drug screening** on Plaintiff **without his consent, without a warrant, without probable cause, and without any applicable exception. The forced extraction and testing of Plaintiff's bodily fluids for controlled substances — without his knowledge or consent, without criminal proceedings, and without medical justification — constitutes an unreasonable search. As established in *United States Ex Rel. Ingram v. Montgomery County Prison Board*, 369 F. Supp. 873 (E.D. Pa. 1974), "the Statute clearly states 'Every person' and not 'Every Official'" — and § 1983 applies to any person acting under color of state law who deprives another of a federal right.**

**15.** Defendant Kurien deprived Plaintiff of his rights under the Fourteenth Amendment of the United States Constitution by subjecting him to **racial discrimination.** The decision to order a **full-panel drug screen on a Black man without consent, without criminal charges, and without medical justification — a procedure typically reserved for criminal defendants and parolees** — while no such procedure was ordered for similarly situated non-Black patients, reflects intentional **racial discrimination** in violation of the **Equal Protection Clause.**

**16.** Defendant Kurien further deprived Plaintiff of his Fourteenth Amendment right to due process by **falsifying his medical records, conspiring to create a fraudulent medical narrative branding him as a drug addict, and concealing evidence of her criminal conduct — all of which subverted Plaintiff's right to a fair legal process and his right to seek redress for violations of his rights.**

**17. As a direct and proximate result of Defendant Kurien's constitutional violations, Plaintiff has suffered actual damages, emotional distress, and the impairment of his constitutional rights. Plaintiff is entitled to compensatory and punitive damages pursuant to 42 U.S.C. § 1983.**

---

COUNT 4: CIVIL RICO — PATTERN OF RACKETEERING ACTIVITY

(18 U.S.C. §§ 1962(c), 1964(c))

18. Plaintiff realleges and incorporates by reference all preceding paragraphs.

**19. An "enterprise" existed within the meaning of 18 U.S.C. § 1961(4), consisting of Defendant Kurien and her co-conspirators within Kaiser Permanente's Psychiatry department, Addiction Medicine and Recovery Services (AMRS) department, and Pharmacy department. These individuals and departments engaged in a coordinated pattern of conduct designed to: (a) secretly record Plaintiff's confidential medical appointments; (b) fabricate false consent entries and transmit them through interstate wire communications; (c) create a fraudulent medical narrative branding Plaintiff as a drug addict; and (d) conceal evidence of the foregoing criminal conduct.**

**20. The enterprise affected interstate commerce because its activities involved the use of interstate wire communications networks, including the Abridge AI cloud-based processing servers and Kaiser Permanente's interstate electronic health record systems.**

**21.** Defendant Kurien conducted and participated in the affairs of this enterprise through a **pattern of racketeering activity** within the meaning of **18 U.S.C. § 1961(5), consisting of at least two predicate acts:**

a. **Wire Fraud (18 U.S.C. § 1343):** Defendant Kurien devised a scheme to **defraud Plaintiff of his right to privacy, his right to accurate medical records, and his right to informed consent. In furtherance of this scheme, she transmitted or caused to be transmitted false medical records — including the fabricated consent notations — through interstate wire communications, including the Abridge AI application's cloud servers and Kaiser's Epic electronic health record system. As established in *United States v. Martinez*, 588 F.3d 301 (6th Cir. 2009), to establish wire fraud, the government must prove "(1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property." Each of these elements is satisfied. Multiple wire transmissions occurred over a period of months, establishing the continuity required for a pattern.**

b. **Obstruction of Justice (18 U.S.C. § 1512):** Defendant Kurien intentionally concealed, destroyed, and **refused to produce audio recordings,** Abridge AI **audit logs, consent verification data, and electronic evidence stored on her personal cellular device, with the intent to prevent the use of this evidence in official proceedings. Her false statements in medical records and sworn declarations were made with intent to deceive the court and obstruct justice.**

22. **The predicate acts of wire fraud and obstruction of justice demonstrate both relatedness (similar purpose, participants, and methods) and continuity (extended period of criminal conduct spanning December 2024 through the present), satisfying the "pattern" requirement of 18 U.S.C. § 1961(5).**

23. **Plaintiff has been injured in his business or property by reason of Defendant Kurien's RICO violations, including the costs of medical care resulting from the attempted murder and medication tampering, the costs of legal proceedings, and the impairment of his rights.**

24. **Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover treble damages, costs of suit, and reasonable attorney's fees.**

---

### COUNT 5: MEDICAL BATTERY AND ATTEMPTED MURDER (State Law — Supplemental Jurisdiction)

25. Plaintiff realleges and incorporates by reference all preceding paragraphs.

26. **Plaintiff did not consent to the administration of Fentanyl during the colonoscopy procedure.** The administration of this substance constituted a harmful and offensive touching.

27. Defendant Kurien knew of Plaintiff's allergy and the extreme risk the substance posed to his life. **Her act of approving it without informed consent was an intentional, willful, and malicious act exceeding all standards of medical negligence.**

28. **Defendant Kurien's unilateral alteration** of Plaintiff's critical palliative medication regimen — **reducing Gabapentin from 23,400 mg to 3,600 mg daily (an 80%+ reduction after 18 years of dependency), prescribing Valium (diazepam),**

**Clorazepate (benzodiazepine), Effexor (Antidepressant) despite a documented severe allergy, and substituting contraindicated drugs including Librium, Clorazepate, and Effexor — without Plaintiff's informed consent, constituted additional medical battery causing direct harm, suffering, and an emergency hospitalization on February 18, 2025.**

**29.** These acts, taken together, constitute attempted murder under California Penal Code §§ 187/664. Defendant Kurien **intentionally committed acts** that were a **substantial step** toward **causing Plaintiff's death, with conscious disregard for human life and implied malice.** By **catastrophically reducing a life-sustaining medication after 17 years of dependency and prescribing a known severe allergen, she acted with the intent to kill or with reckless disregard of the probability of causing death.**

**30. As a direct and proximate result, Plaintiff suffered physical and emotional harm, an emergency hospitalization, exacerbation of his terminal condition, and severe pain and suffering.—**

COUNT 6: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(State Law — Supplemental Jurisdiction)

31. Plaintiff realleges and incorporates by reference all preceding paragraphs.

**32.** Defendant Kurien's course of conduct — **secretly recording a terminally-ill Black patient six times, falsifying his medical records to conceal criminal conduct, bringing an unauthorized observer into a private exam after explicit objection, administering a potentially lethal drug against a known allergy, slashing his life-sustaining Gabapentin dosage by 80%+ to induce lethal seizures, prescribing a known allergen to trigger anaphylaxis, ordering a full-panel drug screen on him**

**without consent, conspiring with Psychiatry and Addiction Medicine to brand him as a drug addict, and concealing and destroying evidence of her criminal conduct — was extreme, outrageous, and exceeded all possible bounds of decency.**

**33.** Defendant Kurien acted **with the intent to cause, or with reckless disregard of the probability of causing, severe emotional distress.**

**34.** As a **direct and proximate result, Plaintiff has suffered and continues to suffer severe emotional distress, including fear, anxiety, humiliation, post-traumatic stress, and a profound loss of trust in the medical profession during the final months of his life.**

**35. Plaintiff is entitled to compensatory and punitive damages.**

---

COUNT 7: VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT (Cal. Penal Code §§ 632, 637.2)

36. Plaintiff realleges and incorporates by reference all preceding paragraphs.

37. The medical appointments between **Plaintiff and Defendant Kurien were confidential communications within the meaning of California Penal Code § 632(c).**

**38.** Defendant Kurien, without the consent of all parties, intentionally used an **electronic amplifying or recording device to eavesdrop upon or record these confidential communications on at least six occasions — five Abridge AI recordings and one unauthorized third-party observer — in violation of Penal Code §§ 632 and 632.7.**

**39. Pursuant to Penal Code § 637.2, Plaintiff is entitled to recover the greater of $5,000 per violation or three times his actual damages. Plaintiff is therefore entitled to statutory damages of at least $30,000.**

COUNT 8: INTRUSION UPON SECLUSION (State Law — Supplemental Jurisdiction)

40. Plaintiff realleges and incorporates by reference all preceding paragraphs.

41. Defendant Kurien **intentionally intruded into Plaintiff's private medical communications and private physical examinations, including by: (a) secretly recording five confidential medical appointments; (b) bringing an unauthorized third-party observer (Salina Lo) into a private medical examination; and (c) ordering an unauthorized full-panel drug screen on Plaintiff's bodily fluids without consent**

NINTH CAUSE OF ACTION

(Spoliation of Evidence and Destruction of Evidence)

**1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.**

**2. Upon discovering Defendant Kurien's unlawful recordings, Plaintiff demanded production of the audio recordings, Abridge AI audit logs, consent verification data, and all metadata associated with the six unauthorized recordings.**

**3. Defendant Kurien and affiliated entities have refused to produce any such evidence. Text message exchanges with Kaiser Claims Adjuster "Reggie" confirm the existence of the recordings while simultaneously attempting to pressure Plaintiff to accept a nominal $3,000 settlement and remove Defendant Kurien from any lawsuit — demonstrating institutional awareness of the violations and an intent to suppress evidence.**

4. Because Abridge AI recordings are initiated through the clinician's personal cellular device, Defendant Kurien's own device constitutes a repository of relevant evidence including application usage data, metadata, timestamps, and audit information. Defendant Kurien has failed and refused to preserve or produce any such evidence.

5. Defendant Kurien's deliberate destruction, concealment, and suppression of evidence was undertaken with the intent to prevent Plaintiff from proving his claims and to obstruct justice.

6. As a direct and proximate result of Defendant Kurien's spoliation of evidence, Plaintiff has been deprived of critical proof of the unlawful recordings, has suffered additional emotional distress, and has incurred costs in attempting to obtain the evidence through other means.

7. Plaintiff is entitled to compensatory and punitive damages, and such adverse inference instructions and sanctions as the Court deems appropriate.

<u>TENTH CAUSE OF ACTION</u>

(Perjury and False Statements in Official Medical Records)

8. Plaintiff realleges and incorporates by reference all preceding paragraphs.

9. Defendant Kurien, on at least five separate occasions, knowingly and willfully inserted the verbatim false statement "Patient provided verbal consent to be recorded using documentation assistance tool" into Plaintiff's official Kaiser Permanente medical records, corresponding to appointments

on December 24, 2024; January 30, 2025; February 25, 2025; March 23, 2025; and April 8, 2025.

10. These statements were and are categorically false. Plaintiff never provided verbal or written consent for any recording. Defendant Kurien never asked for consent. No consent was ever given.

11. Defendant Kurien made these false statements knowingly, willfully, and with intent to deceive — creating a fraudulent post-hoc paper trail designed to conceal the criminal nature of her secret recordings and to shield herself from legal consequences.

12. Defendant Kurien was legally obligated to maintain accurate medical records under California law, federal law, and the HIPAA Privacy Rule. Her false entries constitute perjury under California Penal Code § 118 and violations of federal record-keeping requirements.

13. These false statements caused direct harm to Plaintiff by creating a fraudulent official record that Defendant Kurien and Kaiser's legal counsel have subsequently relied upon to deny the unlawful recordings, obstruct Plaintiff's access to justice, and defend against Plaintiff's claims in both state and federal proceedings.

14. As a direct and proximate result of Defendant Kurien's perjury and false statements in official medical records, Plaintiff has suffered damages including but not limited to: the cost of disproving the false entries, the denial of regulatory and law enforcement action based on the fraudulent record, prolonged litigation, and severe emotional distress.

15. **Plaintiff is entitled to compensatory and punitive damages for Defendant Kurien's knowing and willful falsification of official medical records.**

**Respectfully Submitted,**

**September 23, 2026**

Robert D. Stewart

**Robert D. Stewart (Plaintiff in Pro Per)**

# EXHIBIT LIST

## Plaintiff's Exhibits A–P

## Robert Stewart v. Erica Pych Kurien, D.O.

4/18/25 1:53 PM Visit Summary Kaiser Permanente

KAISER PERMANENTE

**Date printed:** Friday, April 18, 2025
**Kaiser Permanente Member name:** Robert D Stewart
**Date of birth:** 8/17/1969
**MRN:** [illegible]

Notes

## Progress Notes

ERICA PYCH KURIEN DO at 3/23/2025 1:05 PM

Office Visit Note

Patient provided verbal consent to be recorded using documentation assistance tool.

Chief Complaint

Robert D Stewart is a 55 Y male here with

# Exhibit A

## Kaiser Permanente Progress Notes (March 23, 2025)

Document stating: "Patient provided verbal consent to be recorded using documentation assistance tool."

(Plaintiff disputes this statement as false and fabricated.)

KAISER PERMANENTE

Date printed: Friday, April 18, 2025
Kaiser Permanente Member name: Robert D Stewart
Date of birth: 8/17/1969
MRN: 110002297129

Notes

## Progress Notes

ERICA PYCH KURIEN DO at 4/8/2025 1:11 PM

**Office Visit Note**

Patient provided verbal [illegible] to be recorded using documentation assistance tool

**Chief Complaint**

Robert D Stewart is a 55 Y male here with

**Chief Complaint**

Patient presents with
- FOLLOW UP EXAM

# Exhibit B

## Kaiser Permanente Progress Notes (April 8th, 2025)

Second instance documenting alleged "verbal consent" to recording using Abridge AI.

(Plaintiff did not give consent.)


ERICA PYCH KURIEN DO

You

The 3RD TIME (yesterday) you VIOLATED my rights

In California, RECORDING a confidential communication WITHOUT the CONSENT of ALL PARTIES involved is ILLEGAL under PENAL CODE SECTION 632, also known as the California INVASION of PRIVACY Act (CIPA)

This law applies to PRIVATE CONVERSATIONS, including those with HEALTHCARE PROVIDERS, where one party has a reasonable EXPECTATION of PRIVACY

Here's a breakdown of the best approach if YOUR DOCTOR RECORDED YOUR APPOINTMENT WITHOUT YOUR CONSENT in California

1. Understand Your Rights: TWO PARTY CONSENT

California is an "all-party consent" state, meaning EVERYONE INVOLVED in a CONFIDENTIAL conversation MUST AGREE TO BE RECORDED. Your DOCTOR RECORDING YOU WITHOUT YOUR KNOWLEDGE or CONSENT is a VIOLATION OF THIS LAW

2. CONFIDENTIAL COMMUNICATION

A MEDICAL APPOINTMENT is considered a CONFIDENTIAL COMMUNICATION as you have a reasonable EXPECTATION that YOUR DISCUSSION with YOUR DOCTOR will REMAIN PRIVATE

Your friend in room = CRIME


DR. LINDSEY MARIE ANN PYCH KURIEN

The 3RD TIME (yesterday) you VIOLATED my rights

In California, RECORDING a confidential communication WITHOUT the CONSENT of ALL PARTIES involved is ILLEGAL under PENAL CODE SECTION 632, also known as the California INVASION of PRIVACY Act (CIPA)

This law applies to PRIVATE CONVERSATIONS, including those with HEALTHCARE PROVIDERS, where one party has a reasonable EXPECTATION of PRIVACY

Here's a breakdown of the best approach if YOUR DOCTOR RECORDED YOUR APPOINTMENT WITHOUT YOUR CONSENT in California

1. Understand Your Rights, TWO PARTY CONSENT

California is an "all-party consent" state, meaning EVERYONE INVOLVED in a CONFIDENTIAL conversation MUST AGREE TO BE RECORDED. Your DOCTOR RECORDING YOU WITHOUT YOUR KNOWLEDGE or CONSENT is a VIOLATION OF THIS LAW

2. CONFIDENTIAL COMMUNICATION

A MEDICAL APPOINTMENT is considered a CONFIDENTIAL COMMUNICATION as you have a reasonable EXPECTATION that YOUR DISCUSSION with YOUR DOCTOR will REMAIN PRIVATE

Your friend in room = CRIME


https://healthy.kaiser

ROBERT STEWART

First Name: ROBERT
Last Name: STEWART
Email Address: [illegible]
MRN: [illegible]

Comments or Questions: [illegible] ... 15 years of HELL ... and your LEGAL RECKONING is at hand

A mere CLAIMS ADJUSTER [illegible] ATTORNEY can REPLACE or substitute for a direct CIVIL LAWSUIT against a CRIMINAL PHYSICIAN [illegible] is ILLEGAL in SMALL CLAIMS COURT under CALIFORNIA LAW

ERICA R KURIEN will ANSWER questions before a JUDGE for her CRIMINAL activities

Furthermore, in California recording a CONFIDENTIAL communication without TWO PARTY CONSENT is a VIOLATION of California Penal Code 632 (CIPA). This CALIFORNIA INVASION of PRIVACY ACT applies to all conversations with HEALTHCARE PROVIDERS, where one party has a reasonable EXPECTATION of PRIVACY

[illegible] but we have nothing to talk about. ERICA R KURIEN is NOT ABOVE THE LAWS of USA

# EXHIBIT C

## Kaiser Permanente Visit Summary / After-Visit Notes

Showing post-visit discovery of recordings and documentation assistance tool usage.

San Francisco Police Department

Report Type: Initial **INCIDENT REPORT** 250245648

S U S P E C T 1

P R O P E R T Y

San Francisco Police Department

Report Type: Initial **INCIDENT REPORT** 250245648

**NARRATIVE**

# Exhibit D

San Francisco Police Department Incident Report No. 250245648

Including officer narrative confirming Plaintiff's report of non-consensual recordings.



San Francisco Police Department

REPORTEE FOLLOW-UP

Case Number: 250245648

Case numbers are assigned to an investigator based on facts obtained during the initial investigation.

| | |
|---|---|
| [ ] Company A (Central) | 315-2400 |
| [ ] Company B (Southern) | 575-6000 |
| [ ] Company C (Bayview) | 671-2300 |
| [ ] Company D (Mission) | 558-5400 |
| [ ] Company E (Northern) | 614-3400 |
| [ ] Company F (Park) | 242-3000 |
| [ ] Company G (Richmond) | 666-8000 |
| [ ] Company H (Ingleside) | 404-4000 |
| [ ] Company I (Taraval) | 759-3100 |
| [ ] Company J (Tenderloin) | 345-7300 |
| [ ] Auto/Burglary | 553-7324 |
| [ ] Community Violence Reduction Team (CVRT) | 553-1401 |
| [ ] Crime Gun Investigations Center | 553-9528 |
| [ ] Financial Crimes | 553-1521 |
| [x] General Work | 553-9192 |
| [ ] Homicide | 553-1145 |
| [ ] Narcotics | 553-1426 |
| [ ] Night Investigations | 553-1201 |
| [ ] Robbery | 553-1201 |
| [ ] Special Investigations | 553-1133 |
| [ ] Traffic Collision Invest. Unit | 678-3600 |

**Special Victims Unit**

| | |
|---|---|
| [ ] Child Abuse/Juvenile | 553-1361 |
| [ ] Domestic Violence/Stalking | 553-9225 |
| [ ] Missing Persons | 734-3070 |
| [ ] Sex Crime/Human Trafficking | 553-1361 |

Liu 4792

Officer's Name and Star No.

SFPD 105 Front (Rev. 03/25)

# Exhibit E

SFPD Follow-Up / Reportee Follow-Up Form

Acknowledging investigation and assignment of case number.

Report Type: Initial

San Francisco Police Department
**INCIDENT REPORT**

250245648

## NARRATIVE

On 05/02/2025 at approximately 1521 hours (R/V1) Robert Stewart entered Richmond Station to file a police report

Stewart stated the following: On 03/23/2025 and 04/09/2025 he visited his family doctor (S1) Erica Kunen at Kaiser Permanente which is located at 2425 Geary Boulevard. Stewart said on 04/09/2025 he reviewed his progress report and found out that his conversations with the doctor were recorded

Stewart said he never give consents on his doctor visits to be recorded. Stewart wants to file a police report and press charges for the incidents

Stewart provided a (EVD1) written statement and I booked into evidence at Richmond Station

I gave Stewart a follow up form with this case number

# Exhibit F

Written Statement Submitted to SFPD (EVD1)

Plaintiff's sworn written statement regarding unauthorized recordings.

OMBC
DEPARTMENT OF CONSUMER AFFAIRS • OSTEOPATHIC MEDICAL BOARD OF CALIFORNIA
1300 National Drive, Suite 150, Sacramento CA 95834
P (916) 928-8390 | F (916) 928-8392 | www.ombc.ca.gov

May 13, 2025

ROBERT STEWART
7315 GEARY BLVD APT 3
SAN FRANCISCO, CA 94121

Re: Dr. ERICA PYCH KURIEN, DO
OMBC Case Number: 9002025000377

Dear ROBERT STEWART:

This is to acknowledge your recent correspondence regarding Dr. ERICA PYCH KURIEN, DO. Enforcement Analyst Robin Matson has been assigned to review your complaint to determine whether additional information may be necessary to evaluate your concerns, as well as confirm that the nature of your complaint falls within our jurisdiction.

Pursuant to Business and Professions Code section 2230.5, the Osteopathic Medical Board of California (Board) must file an Accusation (formal charges against a physician's license) within three (3) years of the date the Board is first notified of the act or omission alleged as the ground for disciplinary action or seven (7) years from the date of the incident, whichever occurs first. ***As such, if you wish to provide any additional information to the Board that may assist our office in investigating the treatment provided, please send these documents to your analyst immediately, information can be received via email, by mail, or via fax***. Documents may include patient records, photographs, text messages, audiotapes, correspondence, billing statements, proof of payments, etc. When submitting your information please refer to the case number referenced above.

Please be advised that you may be receiving several requests and or status letters at various stages throughout the complaint review process. However, if you have any questions your analyst can be reached at Robin.Matson@dca.ca.gov or (916) 928-7638.

We appreciate your patience and thank you for bringing your concerns to our attention.

CONSUMER PROTECTION UNIT (CPU)
OSTEOPATHIC MEDICAL BOARD OF CALIFORNIA

# Exhibit G

Osteopathic Medical Board of California

Acknowledgment Letter

**OMBC Case No. 9002025000377 confirming complaint against Defendant.**

## Online Complaint Summary



| | |
|---|---|
| Board | Medical Board of California |
| License Type: | Physician's and Surgeon's |
| Complaint Number: | 8002025117229 |
| Incident Date: | 04/07/2025 |
| Description: | Dr. Erica Kurian, Kaiser Permanente (Northern California) twice illegally recorded me without my written or oral consent. I only learned about this after reading the after-visit notes she put in my medical record. The first time occurred on March 21, 2025. When I saw this in the notes, I immediately submitted an online reply clearly stating that she never hinted to me that she would record the appointments. |

**Respondent**

| | |
|---|---|
| License Type: | Physician's and Surgeon's |
| First Name: | Erica |
| Last Name: | Kurien |
| Gender: | Female |
| Address: | 2238 Geary Blvd<br>4th floor<br>san francisco, CA<br>94115<br>US |

# Exhibit H

Medical Board of California Online Complaint Summary

Complaint detailing illegal recordings and lack of consent.

# EXHIBIT I

← Complaint filed: U.S. Department of Health and Human Services - Office of Ci...

You will likely get an email that this form was submitted. They may use your name when contacting Kaiser.

https://ocrportal.hhs.gov/ocr/cp/complaint_confirmation.jsf

**Complaint Form Confirmation**

Receipt Number 618303

Thank you for contacting the U.S. Department of Health and Human Services, Office for Civil Rights (OCR). OCR enforces federal civil rights laws which prohibit discrimination in the delivery of health and human services based on race, color, national origin, disability, age, sex, religion, and the exercise of conscience, and also enforces the Health Insurance Portability and Accountability Act (HIPAA) Privacy, Security and Breach Notification Rules.

We are in the process of reviewing your correspondence. We will complete our initial review as quickly as possible.

If you have questions about the novel coronavirus (COVID-19) please go to the Centers for Disease Control website at https://www.cdc.gov.

For additional information about OCR including the complaint review process, and our HIPAA, civil rights, and conscience regulations, please see the following links:

https://www.hhs.gov/ocr/complaints/index.html
https://www.hhs.gov/hipaa/index.html
https://www.hhs.gov/civil-rights/index.html

If you have any additional questions or need a reasonable accommodation, please contact OCR's Customer Response Center at 1-800-368-1019, Monday through Friday, 8:00 am to 6:00 pm ET.

Sincerely,
Director, CCMO

## U.S. Department of Health & Human Services – Office for Civil Rights Complaint Confirmation

**Receipt No. 618303 (HIPAA / privacy violations).**

DRUG PAIN PANEL

Mar 20, 2025



ERICA PYCH KURIEN DO

URINALYSIS

Mar 20, 2025



JESSICA B LAPASIA MD

URINALYSIS

Mar 20, 2025



JESSICA B LAPASIA MD

URINE BENZODIAZEPINES (8 DRUGS) CONFIRMATION

Mar 20, 2025



ERICA PYCH KURIEN DO

AMPHETAMINE CONFIRMATION PANEL

Mar 20, 2025



ERICA PYCH KURIEN DO

URINE BENZODIAZEPINES (8 DRUGS) CONFIRMATION
Collected on March 20, 2025 5:00 PM

Click to learn more

Lab tests

Results

Compare result trends

**CLONAZEPAM CONFIRM, URINE, LCMS, QUAL**
View trends
Normal value: UNDETECT
Value **UNDETECT**

**FLUNITRAZEPAM CONFIRM, URINE, LCMS, QUAL**
View trends
Normal value: UNDETECT
Value **UNDETECT**

**TRIAZOLAM CONFIRM, URINE, LCMS, QUAL**
View trends
Normal value: UNDETECT
Value **UNDETECT**

**ALPRAZOLAM CONFIRM, URINE, LCMS, QUAL**
View trends
Normal value: UNDETECT
Value **DETECTED**

**OXAZEPAM CONFIRM, URINE, LCMS, QUAL**
View trends
Normal value: UNDETECT
Value **UNDETECT**

**LORAZEPAM CONFIRM, URINE, LCMS, QUAL**
View trends
Normal value: UNDETECT
Value **DETECTED**

**NORDIAZEPAM CONFIRM, URINE, LCMS, QUAL**
View trends
Normal value: UNDETECT
Value **UNDETECT**

**TEMAZEPAM CONFIRM, URINE, LCMS, QUAL**
View trends
Normal value: UNDETECT
Value **UNDETECT**

**Comment 29**
View trends
Value **SEE NOTE**
Benzodiazepine Confirmation includes Clonazepam, Flunitrazepam, Triazolam, Alprazolam, Oxazepam, Lorazepam,

← Test Results List

# DRUG PAIN PANEL

Collected on Mar 20, 2025 5:00 PM

Click to learn more

## Results

Compare result trends

**OPIATES 300 SCREEN, URINE, QUAL**
View trends
Normal value: UNDETECT
Value: **UNDETECT**

**Amphetamines, urine, screening**
View trends
Normal value: UNDETECT
Value: **T'FOLLOW**

**Cocaine, urine, ql**
View trends
Normal value: UNDETECT
Value: **UNDETECT**

**THC, urine, screening**
View trends
Normal value: UNDETECT
Value: **UNDETECT**

**Benzopines screen, urine, qual**
View trends
Normal value: UNDETECT
Value: **T'FOLLOW**

**Barbiturates,ur,ql**
View trends
Normal value: UNDETECT
Value: **UNDETECT**

**Ethanol, urine, ql**
View trends
Normal value: UNDETECT
Value: **UNDETECT**

**Oxycodone,ur,ql**
View trends
Value: **UNDETECT**

**Creatinine, urine**
View trends
Value: **166**

**Drug Pain Panel, Comment, Urine**
View trends
Value: **SEE NOTE**

Learn more about DRUG PAIN PANEL

Additional information

DRUG PAIN PANEL
Collected on March 20, 2025 5:00 PM

Additional details

Lab tests

Results New

Compare result trends

**OPIATES 300 SCREEN, URINE, QUAL**

View trends
Normal value: UNDETECT

Value **UNDETECT**

**Amphetamines, urine, screening**

View trends
Normal value: UNDETECT

Value **T'FOLLOW**

**Cocaine, urine, ql**

View trends
Normal value: UNDETECT

Value **UNDETECT**

**THC, urine, screening**

View trends
Normal value: UNDETECT

Value **UNDETECT**

**Benzopines screen, urine, qual**

View trends
Normal value: UNDETECT

Value **T'FOLLOW**

This test was developed and its performance characteristics determined by TPMG
Regional Laboratory. It has not been cleared or approved by the FDA. The laboratory is regulated under CLIA as qualified to perform high-complexity testing. This test is used for clinical purposes. It should not be regarded as investigational or for research.

**Barbiturates,ur,ql**

View trends
Normal value: UNDETECT

Value **UNDETECT**

The Urine Barbiturate Screen tests for the presence of Phenobarbital and for intermediate (Amobarbital, Butalbital) and short-acting (Pentobarbital.Secobarbital, Butabarbital) barbiturates

**Ethanol, urine, ql**

View trends
Normal value: UNDETECT

Value **UNDETECT**

**Oxycodone,ur,ql**

View trends
Normal value: UNDETECT

Value **UNDETECT**

**Creatinine, urine**

← Test Results List

# AMPHETAMINE CONFIRMATION PANEL

Collected on March 20, 2025 5:00 PM

Click to learn more

Lab tests

● **Results** New

Compare result trends

**Amphetamine,ur,ql, confirmation**

View trends

Normal value: UNDETECT

Value **UNDETECT**

**Methamphetamine, urine, confirmation, ql**

View trends

Normal value: UNDETECT

Value **UNDETECT**

**Methylenedioxyamphetamine,ur,ql, confirmation**

View trends

Normal value: UNDETECT

Value **UNDETECT**

**METHYLENEDIOXYMETHAMPHETAMINE,UR,QL, CONFIRMATION**

View trends

Normal value: UNDETECT

Value **UNDETECT**

**Comment, amphetamine confirmation, urine**

View trends

Value **SEE NOTE**

The Urine Amphetamines Confirmation Cut-off value is 250 ng/mL.

This test was developed and its performance characteristics determined by TPMG Regional Laboratory. It has not been cleared or approved by the FDA. The laboratory is regulated under CLIA as

## Assessment & Plan

Chronic Neuropathic Pain

control was fine

Managed with gabapentin for over 21 years with inadequate control. Resistant to various medications. Asking for early refills, discussed with neurology that 3600mg a month is the max dosage. Will reach out to care team/AMRS to help with plan to get him to a safer dosage → Collusion + violates Doctor/Patient Privelage

- Engage with ombudsman for healthcare navigation and advocacy.

From [illegible]000 per day to 3,600 would KILL ME in 24 hours

Insomnia

Difficulty with sleep, ineffective recent medication changes. Requests return to Ambien, previously effective. Current medications not equivalent in dosage.

- Coordinate with care team for sleep medication management.

She admits Ambien worked but took it from me without notice, Attempted murder with Vallium

Anxiety

Anxiety related to medical condition and symptom management challenges. Frustration with treatment plan and provider response. Uses lorazepam. Informed Lie→ about strict pharmacy refill policies, habit forming nature of medication

- Refill lorazepam prescription, must last 30 days and no early refills GI motility made
- Coordinate with care providers for timely communication and support. this impossible

Ativan was for GI motility, not anxiety, Chronic Liar

General Health Maintenance

Seeking palliative care for symptom management and quality of life. Aware of treatment limitations. Informed palliative care is the only option.

- Coordinate with care providers to discuss palliative care options and support.

She wanted me to suffer + die.

Follow-up

Requires ongoing support and care coordination for complex conditions.

Palliative Addmission

Potential medication side effects and risks were reviewed with patient.

The Peer Reviewed normal amount is 10 mgs per day. She hated my having 2mgs. She wanted to lower it to 1 mg. (Evil motive)

KAISER PERMANENTE®

**Date printed:** Friday, April 18, 2025
**Kaiser Permanente Member name:** Robert D Stewart
**Date of birth:** 8/17/1969
**MRN:** 110002297129

Notes

## Progress Notes

ERICA PYCH KURIEN DO at 4/8/2025 1:11 PM

Office Visit Note
Patient provided verbal consent to be recorded using documentation assistance tool.
Never Knew that I was being recorded

Chief Complaint
Robert D Stewart is a 55 Y male here with

**Chief Complaint**
Patient presents with
- FOLLOW UP EXAM

History of Present Illness
The patient, with a long-standing history of chronic pain and neuropathy, presents with dissatisfaction with his current medication regimen. The patient has been on gabapentin for 21 years, but reports that it is not always effective in managing his symptoms. He has stopped taking some of his medications, including azathioprine, due to side effects and lack of efficacy. The patient also reports that he has tried several antidepressants, but these have not been effective and have caused dry mouth. He expresses a desire for palliative care and is considering leaving Kaiser due to dissatisfaction with his care.
Chronic Longstanding Addmission that I'm Palliative

Objective
BP 139/91 | Pulse 93 | Temp 97.4 °F (36.3 °C) (Temporal) | Ht 6' 3.5" | Wt 87.1 kg (192 lb) | SpO2 100% | BMI 23.68 kg/m²

Physical Exam
orange highlight = Lies Yellow = Truth

POLYNEUROPATHY

patient has follow-up with neurology. Patient is also aware of recommendation of gabapentin 3600 mg as maximum dosage. Future goal would be to help patient get back down to appropriate dosage of gabapentin. I also placed a refill of lorazepam on file to be filled no earlier than April 22 to bridge until our May 1 appointment. Instructed patient that he needs to decrease lorazepam back to a maximum of 1 tablet twice a day with goal to further decrease..

Orders:

• LORazepam (ATIVAN) 1 mg Oral Tab; Take 1 tablet by mouth 2 times a day as needed for anxiety or muscle spasm Not to be filled until 4/22/25. Prescription must last one week, no early refills.

Murder Plot manifest

Robert D Stewart is a 55 Y male who presents with a chief complaint of PHYSICAL EXAM, ANNUAL

HPI: Patient is here today to discuss his sleep medications. Is very adamant of need to refill his Ambien medication after continuing with this medication has been declined by 2 sleep specialists. Kurien made them join her evil plot to kill me

Past Medical History & Patient Active Problem List:

POLYNEUROPATHY
ABNL RENAL TUBULAR FUNCTION
FATTY LIVER
ALLERGIC RHINITIS
HYPERLIPIDEMIA
AUTOIMMUNE DISORDER
SCROTAL VARICES
HTN (HYPERTENSION)
PHASE POPULATION MANAGEMENT PROGRAM
INSOMNIA
HX OF COLONOSCOPY
TREMOR
LICHEN PLANUS
PARESTHESIA
PREDIABETES
CIRCADIAN RHYTHM SLEEP DISORDER, DELAYED SLEEP PHASE TYPE

All of these are evidence of Palliative Need!

I have confirmed the presence of the above clinical diagnoses, which were considered in the current and ongoing care of the patient. At the time of this visit, the medical record indicates, and/or the patient states, that there are no changes in these conditions unless otherwise noted. As treatment warrants, the patient has been advised to follow up with his PCP or appropriate specialist.

## Outpatient Medications Prior to Visit

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • Gabapentin (NEURONTIN) 800 mg Oral Tab | Take 5 tablets by mouth every 6 to 8 | 900 tablet | 1 |

Explore topics, care, coverage

Search

< Medical Record

Date printed: Friday, April 18, 2025
Kaiser Permanente Member name: Robert D Stewart
Date of birth: 8/17/1969
MRN: 110002297129

Notes

# Telephone Encounter

SLOAN LESLEY NORMAN PHD at 4/4/2025 1:48 AM

ECONSULT OUTREACH

TAV 10 min

Lie = don't have pain

Outreached pt to follow up on a referral from Dr. Kurien. Referral states ' Patient with chronic neuropathic pain, on high dose ambien and gabapentin and lorazepma, seen by neurology, GI, wanted palliative. I need help managing his medications.

and I should have received Palliative By Law

Educated pt about the multidisciplinary nature of the clinic and providers and provided information about our program philosophy and a brief overview of our treatment services.

Offered med eval. Pt states he is highly uncomfortable with male Mds. Pain Dept has only 2 male physicians. Pt declined med consult. Says he will speal

# AFTER VISIT SUMMARY

KAISER PERMANENTE®

Robert D. Stewart MRN: 110002297129 DoB: 8/17/1969 2/18/2025 KP SAN FRANCISCO ED 415-833-4265

## Instructions

**You were treated by: Chan, Winnie W (M.D.)**

**FOLLOW UP:** Please call in 2 day(s) for an appointment within 7 day(s) at the following clinic: Adult & Family Medicine, 2238 Geary Blvd, 415 833-2200

KP San Francisco Clinic Appointment/Advice Lines:
Adult/Pediatric - (415) 833-2200
Teen (12-18 years) - (415) 833-2200

**CARE INSTRUCTIONS:**

You were evaluated in the Emergency Department for chest pain and tremors. While in the Emergency Department, we ruled out any acute medical emergencies. We discussed that your symptoms may be caused by benzodiazepine withdrawal, and have given a long-acting benzodiazepine here. It is important to follow-up with your outpatient providers and primary care team should you require long-term prescriptions. → Librium (almost Died)

Please return to the Emergency Department if you have chest pain, shortness of breath, seizures, fever, or any new or worsening symptoms that concern you.

**Read the attached information**

1. MEDICINE MANAGEMENT (ENGLISH)
2. Chest Pain, Uncertain Cause-EW (English)

## Today's Visit

You were seen by WINNIE W CHAN MD

## What's Next

FEB 20 2025 **Telephone Visit with MEREDITH R HELLER MD** ← Denied
Thursday February 20 2:00 PM

PALLIATIVE CARE
415-833-0204

FEB 26 2025 **Ultrasound**
Wednesday February 26 1:30 PM
Please call ultrasound department at 415-833-3662 if you need to cancel or reschedule your appointment so we can accommodate other patients as necessary.

ULTRA SOUND LOCATION
2238 GEARY BLVD
SAN FRANCISCO CA 94115-3416
415-833-3700


This is confidential information. Please don't throw away in a Kaiser Permanente trash can

KAISER PERMANENTE®
Kaiser Permanente – AMRS
939 Ellis Street, 6th Floor
San Francisco, CA 94109

March 19, 2025

3 *** 1013 ********* ALL FOR AADC 940

Robert Stewart
7315 Geary Blvd Apt 3
San Francisco, CA 94121-1634

Dear Robert Stewart,

I hope this letter finds you well!

We are writing to inform you that AMRS San Francisco will be moving to 939 Ellis Street, San Francisco, CA 94109, effective April 28, 2025.

When you come in for an appointment, please take the elevator to the 6th floor and check in at the registration area.

Free valet parking is available in the garage at 939 Ellis Street, conveniently located at the building garage.

If you have any questions, please do not hesitate to contact us at (415) 833-9400.

Wishing you good health,

San Francisco Medical Center
AMRS (Formally CDRP)

After Dr. Kurien murdered me, she planned to use the above "corner drug addict" defamation

Report Type: Initial

San Francisco Police Department
**INCIDENT REPORT**

**250316465**

## NARRATIVE

On the above date and time, Ofc. Gilliam #1075 and I (3G15A) were working uniformed patrol in a marked police vehicle, when we were dispatched to 7315 Geary Blvd #5 to meet with a citizen.

All (BWC) Body Worn Cameras were activated en-route and prior to our arrival. All footage was later uploaded to Evidence.com.

On arrival, I met with (R2) Robert Stewart (CA #C6083662) who told me the following information: Stewart stated he was unhappy with is medical care at Kaiser Hospital on Geary Blvd. Stewart stated he has a terminal disease of Lichen Planus Bullous, and he has a new primary care doctor, Dr. Erica Kurien, who he believes is trying to kill him.

Stewart stated Dr. Kurien had modified his prescription medication that he had for twenty-one years. Stewart stated Dr. Kurien took away his Ambien medication, and also reduced his Gabapentin medication from 19,000 mg to 2,300 mg.

I advised Stewart that police have no medical opinion on this matter, but Stewart believed that this change in his prescription could kill him, even though his prescription had changed seven weeks ago.

Stewart also believed that Dr. Kurien changed his prescription in retaliation because he had previously reported her to the medical board.

Stewart requested an incident report for his documentation.

Retrieved by SFLENIA0991 on 8/26/2025 at 9:16 AM
Do Not Duplicate

Report Type: Initial

San Francisco Police Department
**INCIDENT REPORT**

**250245648**

## NARRATIVE

On 05/02/2025 at approximately 1521 hours, (R/V1) Robert Stewart entered Richmond Station to file a police report.

Stewart stated the following: On 03/23/2025 and 04/09/2025, he visited his family doctor, (S1) Erica Kurien at Kaiser Permanente which is located at 2425 Geary Boulevard. Stewart said on 04/09/2025 he reviewed his progress report and found out that his conversations with the doctor were recorded.

Stewart said he never give consents on his doctor visits to be recorded. Stewart wants to file a police report and press charges for the incidents.

Stewart provided a (EVD1) written statement and I booked into evidence at Richmond Station.

I gave Stewart a follow up form with this case number.

# AFFIDAVIT FOR SAN FRANCISCO DISTRICT ATTORNEY

# AFFIDAVIT OF ROBERT D. STEWART

I, Robert D. Stewart, being duly sworn, depose and state as follows:

**1. Personal Information**

- My name is Robert D. Stewart.

- I am an adult resident of San Francisco, California.

- My contact information is: (415) 264-4339.

- I am a retired government 0asset, professional jazz saxophonist, author of ten published books (including two children's books), and have Doctorates in Theology and Astronomy.

**2. Overview of Incident**

- On December 24, 2024, January 30, 2025, February 25, 2025, March 23, 2025, and April 8, 2025, during scheduled medical appointments with Dr Erica P. Kurien at Kaiser Permanente in San Francisco, I was recorded without my knowledge or consent.

- I discovered this fact after reviewing the "After-Visit Summary" notes available to me through Kaiser's patient application, where the statement appeared (verbatim): "Patient provided verbal consent to be recorded using documentation assistance tool."

- This is false. I never gave verbal or written consent to be recorded, nor was I notified in any way that the visits were being recorded. Dr Kurien has no valid proof of such consent on any of the 5 recordings, nor did she ask me for consent. Kaiser has no written or verbal empirical evidence for their disingenuous claims.

**3. Discovery and Confrontation**

- In mid-April 2025, after reviewing the notes, I sent messages through Kaiser's secure messaging system informing Dr. Kurien of the false statement and unauthorized recordings. She did not respond.

- At a later appointment, Dr. Kurien asked in person for permission to record me, which I explicitly refused. After I refused, she led me to a different examination room than usual.

- Dr Kurien's sixth (CIPA) Violation occurred during our final meeting. Kurien brought her friend into our private appointment without my prior knowledge or consent. MS. SOL (a Kaiser employee) stood within the room for the entire meeting as a chaperone. Kaiser Administrator Daniel Woody told me that the meeting was to be a reset. However, it was simply vindictive to show that I have no rights at Kaiser. All were laughing as I left the meeting. Kurien broke the privacy rule of the American Medical Association and Penal Code 632 of (CIPA) for a sixth time.

**4. Reports to Authorities**

- I have filed complaints on three occasions with:

a. San Francisco Police Department

b. San Francisco District Attorney's Office

c. California Medical Board

d. Board of Osteopathic Medicine

**5. Harassment and Discrimination**

- For over 10 years at Kaiser Permanente, I have endured systemic racism, harassment, and intimidation. This has included:

- Requests for armed guards to stand in my presence during vital-sign checks,

- Security escorts from elevators to registration,

- A mugshot photo distributed to Kaiser staff,

- Harassing letters,

- Targeting by Kaiser staff, including an individual known as Daniel Woody (sometimes "Kuster"), who has exhibited apparent hostility toward me.

**6. Medical Misconduct**

- Dr Kurien altered my long-established treatment for Bullous Lichen Planus, a rare autoimmune disease I have had for 21 years, replacing effective medications with dangerous drugs without medical justification.

- Her orders resulted in my first Emergency Department visit in 8 years.

- I was administered fentanyl during a colonoscopy without my knowledge or consent, as well as Librium, Valium, Chlordiazepate (nearly 16 mg/day), Effexor, and others, despite my known allergies to benzodiazepines and antidepressants.

- Dr Kurien also ordered a full drug panel without my consent, which I believe violates state and federal patient rights laws.

**7. Targeting and False Narrative**

- Notes in my medical record indicate racial profiling and an intent to portray me falsely as a drug addict.

- Kaiser staff made two phone calls and sent a letter attempting to get me into a rehabilitation program despite no medical basis.

- I believe there was a conspiracy to harm or kill me and discredit my reputation.

**8. Denial of Palliative Care**

- Despite my irreversible, painful medical condition, Dr. Kurien denied me Palliative Medicine, stating I "do not fit the profile."

**9. Damages and Ongoing Harm**

- I have endured severe emotional distress, physical pain, and fear for my life due to the actions of Dr. Kurien and others at Kaiser Permanente.

- I suspect similar unauthorized recordings and discriminatory practices may be occurring at other Kaiser facilities in California.

**10. Request for Action**

- I respectfully request that the responsible authorities open a criminal investigation into these matters, including the five unauthorized recordings (possible California Invasion of Privacy Act violations, which may be felonies), harassment, medical misconduct, and attempts on my life.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct to the best of my knowledge.

this 19th day of September, 2025, in San Francisco, California

Robert D. Stewart

Robert D. Stewart

Affiant

# Notary Acknowledgement

State of California

County of San Francisco

On this 19th day of September, 2025, before me, a Notary Public in and for said county, personally appeared Robert D. Stewart, known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to this instrument, and acknowledged that he executed the same in his authorized capacity, and that by his signature on the instrument, the person executed the instrument.

WITNESS my hand and official seal.

A. TAYLOR-MELTON
COMM. #2505276
NOTARY PUBLIC, STATE OF CALIFORNIA
SACRAMENTO COUNTY
My Comm. Expires November 24, 2028

Notary Public